FILED

2006 Mar-28  AM 11:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **CATHY GREEN and ACCESS NOW, INC. a Florida not for profit corporation,** | } } } } | |
| **Plaintiffs,** | } } | **Case No.: 2:02-CV-01278-VEH** |
| **v.** | } } | |
| **CLP CORPORATION,** | } } | |
| **Defendant.** | } | |

## OPINION

This Court has before it the February 24, 2004, motion of Defendant CLP Corporation's ("Defendant") for summary judgment as to Plaintiffs Cathy Green and Access Now, Inc's. claims (Doc. 24) and Plaintiffs' motion for partial summary judgment (Doc. 22).   For the reasons set forth below, the Defendant's motion for summary judgment is due to be denied in part and granted in part as to Plaintiffs' Title III American With Disabilities Act claims and Plaintiffs' motion for partial summary judgment is due to be denied.

## I.  Procedural History

1

Plaintiffs Cathy Green and Access Now, Inc. ("Plaintiffs") commenced this action on May 22, 2002 by filing a complaint in this Court alleging violations of Title III of the American With Disabilities Act, 42 U.S.C. §12181 et.seq., (hereinafter referred to as the "ADA"). Plaintiffs Green and Access Now, Inc. filed an Amended Complaint on June 18, 2003 changing the name of the Defendant from Thornton Enterprises, Inc. to CLP Corporation. Plaintiffs allege that Green visited the Defendant's premises in Birmingham, Alabama[1] and was denied full and safe access to the subject properties of Defendant because the premises were not in compliance with the ADA. Plaintiffs allege that Plaintiff Access Now, Inc. and its members, including but not limited to Plaintiff Green, have suffered direct and indirect injury as a result of the Defendant's actions or inactions.

On February 24, 2004, the Defendant filed a motion for summary judgment asserting: (1) that Plaintiff Green lacks standing to bring many of her allegations under the ADA; (2) that Plaintiff Access Now, Inc. has no standing to bring this action under the ADA; (3) that Plaintiff Green has not established entitlement to relief under Title III because (a) removal of many

---

[1] Plaintiff Green visited the Midfield, Vestavia, and Eastwood stores of the Defendant.

of the alleged barriers is not readily achievable under Title III of the ADA and (b) the Defendant has made compliant with the ADA all the readily achievable barriers Plaintiffs allege Green and Access Now's members encountered at Defendant's three stores.

The Defendant has submitted evidence[2] in support of its motion for summary judgment and filed a supporting brief on February 24, 2004.  On April 1, 2004, the Plaintiff filed a brief and evidence[3] in opposition to the Defendant's motion for summary judgment.  The Defendant filed a reply brief on April 9, 2004.

On February 24, 2004, Plaintiffs also filed a motion for partial summary judgment asserting that the Defendant be required to remove all architectural barriers at its places of business that are not in compliance with the ADA. The Plaintiffs submitted evidence in support of their motion for summary

---

[2] The Defendant submitted the depositions of Plaintiff Cathy Green with attached exhibits, Richard Wood with attached exhibits, and Melissa Fendley with attached exhibits. The Defendant also submitted affidavits by Richard Wood with attached exhibits, James Terry with attached exhibits, Phyllis Resnick with attached exhibits, and Grady Woods with attached exhibits.

[3] The Plaintiffs submitted the depositions of Plaintiff Cathy Green with attached exhibits and Richard Wood. The Plaintiff  also submitted affidavits of Phyllis Resnick, Melissa Fendley with exhibits, and Cathy Green.

judgment.[4]  The Defendant filed a brief in opposition to Plaintiff's motion for partial summary judgment on April 2, 2004.

## II.  Standard of Review

### A.  Summary Judgment

Under Federal Rule of Civil Procedure 56©, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000).  The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to

---

[4] Plaintiffs submitted the depositions of Cathy Green, Richard Wallace and Melissa Fendley.  Plaintiff also submitted affidavits by Gilbert Mobley with attached exhibits.  Plaintiff submitted Evan Terry Associates expert report, The American With Disabilities Act Title III Technical Assistance Manual, and other miscellaneous exhibits.

go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial.  Id. at 324.

The substantive law will identify which facts are material and which are irrelevant.  Chapman, 229 F.3d at 1023; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant.  Chapman, 229 F.3d at 1023; Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248; Chapman, 229 F.3d at 1023.  If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  Anderson, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial.  See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)).  If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive

evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115.  Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.  The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to affirmatively show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out

6

to the district court that there is an absence of evidence to support the non-moving party's case.  Fitzpatrick, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

## III.  Relevant Facts

Defendant CLP operates McDonald's restaurants in central Alabama under franchise agreements and leases.  (Wood Aff. ¶3).  Plaintiff Cathy Green's ADA Title III claim involves restaurants operated on leased property by CLP in Vestavia, Midfield, and the Eastwood Mall area of Birmingham, Alabama. Id.  Plaintiff Green has never visited any other CLP restaurant other than the three named above and in the amended complaint.  (Green Dep. p. 75-76.)  Plaintiff Green has used a wheelchair since being paralyzed from the

7

T-12 vertebrae down in a 1985 automobile accident. (Green Dep. I p. 22; II p. 13-18.)  Ms. Green has lived in the Birmingham area since moving from Gadsden in 1989.  (Green Dep. I. p. 15; II p. 6-8, 19-21, 14.) Plaintiff Green has lived at 9869 Westfield Court in Birmingham, Alabama, since November of 2002; for the six years preceding November of 2002, she lived at 7833 Rugby Court in Birmingham, near Eastwood Mall. (Green Dep. I p. 10-11, 19; II p. 1-7, 11.)  Using hand controls,  Plaintiff Green drives her 2001 Monte Carlo.  (Green Dep. I p. 3, 15, 16, 22.)  The only other car her family possesses is a two-door Ford Explorer Sport. (Green Dep. 24; II p. 7-20.) Access Now, Inc. is a nonprofit organization based in Florida. (Amended Complaint ¶4.)  One of the primary purposes of Access Now, Inc. is to represent its members to assure that public spaces and commercial premises are accessible to and usable by its members, to assure its members that they will not be excluded from participation in or be denied the benefits of the services, programs or activities of public accommodations due to their disability. (Complaint ¶4.)

The Vestavia store is operated by CLP Corp. under a franchise agreement and lease with McDonald's Corp., which leases the land from a

8

third party.  (Wood Aff. ¶3.)  The Vestavia store was built in 1973, and has

undergone no structural modifications since January 26, 1992.  (Wood Aff.

¶ 5.; Wood Dep. I p. 23, II p. 14-20; Green Dep. I p. 36; II 13-22.)  Ms.

Green's only visit to the Vestavia store occurred before her move to 9869

Westfield Court in November of 2002.[5]  (Green Dep. I p. 11; II p. 3- -14, 34-

35, 37.)  Plaintiff Green's husband drove her to the Vestavia store to obtain

something to eat on that occasion in her Monte Carlo on the way to the

Riverchase Galleria, and carried out food from the store (as they had planned

to do).  (Green Dep. I p. 34; II p. 20-22, 351-361.)  At the Vestavia store,

although Plaintiff Green did not visit the store in a van, her  problem with the

parking spaces was that she believed the parking spaces would be too small

for a van and said that the spaces were not wide enough to get her wheelchair

out.[6] (Green Dep. P. 39; 42.)  Plaintiff Green alleges in her complaints that

she encountered and/or personally observed  several architectural barriers at

the Vestavia store such as the lack of: 1) van accessible parking for vans with

---

[5] Ms. Melissa Fendley, a member of Plaintiff Access Now, Inc., has visited the Vestavia restaurant.  Ms. Fendley is a T-5 paraplegic who utilizes a wheelchair.

[6] Ms. Fendley encountered an issue with parking at the Vestavia restaurant when she was blocked from accessing her van due to a lack of van accessible parking.

lifts, (2) accessible outside seating, (3) access aisles, (4) path of travel from accessible parking to the entrance, (5) accessible restrooms because there is not enough space for a wheelchair to enter the restrooms and (6) accessible routes to the emergency exits.   Plaintiff Green's only problem with the path of travel from the accessible parking spaces to the ramp to the store was that the path required passing through the path of traffic through the drive through window and the parking lot.  (Terry aff. ¶ 7(b); Green Dep. p. 42, II p. 6-11, 44.)  Plaintiff Green alleges that the access aisles were not wide enough for her to get her wheelchair out.  (Green Dep. 39.)  Plaintiff Green has never been on Vestavia's playground nor has she intended to visit the playground or attempted to use the seating.[7]  (Green Dep. p. 1, 36; II p. 1-12, 20-22, 44, 45-46.)  Plaintiff Green never tried to go in or out an emergency exit at the Vestavia store, does not recall an emergency exit, and, in fact, no emergency exit exists at the Vestavia store.  (Green Dep. p. 76; II p. 1-8, 7-23, 85.) However, Plaintiff Green had no trouble purchasing or receiving food at the Vestavia store.  (Green Dep. P. 53; II p. 8-10.)   The Vestavia store has

---

[7]  Ms. Fendley dined at the playground with her daughter and ate at a table located in the playground area.  Ms. Fendley alleges she encountered some architectural barriers while visiting the Vestavia restaurant.

operated at a loss in each of the preceding two years. (Wood Aff. ¶11; Wood Dep. p. 46; II p. 5-19.)

The Midfield store is located on the edge of a strip mall parking lot to which  neither CLP Corp. nor McDonald's Corp. owns title. (Wood Aff. ¶ 12(b))  Built in 1988, the Midfield store has not been modified since January 26, 1992.  (Wood Dep. p. 22, 23; Wood Aff. ¶ 12(b); Green Dep. p. 53; II p. 11-18.)  Plaintiff Green's only visit to the Midfield store was on or about February 14, 2003.  (Green Dep. p. 50, II p. 10-22.)  At the Midfield store, Plaintiff Green dined in the store for breakfast with her husband, who drove her in his Ford Explorer Sport. (Green Dep. p. 52-53.)  At the Midfield store, Green had no difficulty purchasing and eating her food. (Green Dep. p. 53.) Plaintiff Green alleges in her complaint that she encountered several architectural barriers at the Midfield store  including: (1) inaccessible van parking for vans with lifts; (2) suggestion box protrudes into the path of travel; (3) inaccessible seating; (4) inaccessible signage; (5) lack of maneuvering space at the restroom doors; (6) uninsulated pipes underneath the lavatory; (7) accessible stall is too small; (8) toilet paper dispenser is too far from the water closet; and (9) no rear grab bar is provided in the water

closet.  The Midfield store annually generates little profit after taxes.  (Wood Aff. ¶19; Wood Dep. p. 45, II 10-21.)

The Eastwood store was built in 1971, and has not been modified since January 26, 1992, until a recent modification begun in September of 2003. (Wood Dep. p. 24, II p. 12-18; Wood Aff. ¶ 20, 20(a); Green Dep. p. 66; II p. 3-8.)  Plaintiff Green last visited the Eastwood store on or about June 18, 2003 when she was driven by her husband in her Monte Carlo.[8]  (Green Dep. p. 64-65.)  The Eastwood store has an operating drive-thru window, open 24 hours a day, longer than the hours of operation of the rest of the store, from which all products offered by the store are available.  The drive-thru accounts for over 65% of sales at the Eastwood store.  (Wood Aff. ¶21.)   On her most recent visit to the Eastwood store, Plaintiff Green chose to utilize the drive-thru window.  (Green Dep. p. 66)  Plaintiff Green experienced no problems in purchasing and receiving her food during her last visit to the Eastwood store.  (Green Dep. p. 68, II p. 1-3.) Plaintiff alleges in her complaint that she encountered several architectural barriers at the Eastwood store including: (1)

---

[8] Ms. Fendley has visited the Eastwood restaurant on numerous occasions.  ( Fendley Dep. p. 37-45.)

12

inaccessible van parking for vans with lifts; (2) inaccessible signage in the restrooms; (3) accessible toilet stall is too small; (4) toilet paper dispenser is mounted out of reach; (5) uninsulated pipes under the lavatory; (6) faucet controls require pinching, grasping, and twisting; (7) ramp to the playground is too steep; (8) inaccessible route to the playground; (9) inaccessible outside tables; and (10) access aisles of accessible parking spaces are too narrow. Plaintiff Green last visited the Eastwood store women's restroom over six and a half years before her filing of the complaint in this action.  (Green Dep. p. 68-69.)  Plaintiff Green has never gone onto the playground at the Eastwood store.  (Green Dep. p. 72-74; II p. 6-13.)  Although Plaintiff Green has been to the Eastwood store many times, she has never attempted to use any of the ramps to the playground; she asserts that she  just looked at the playground.[9] (Green Dep. p. 65, 72-73.)  The Eastwood store made $196, 507 and $141, 830 in the last two years respectively.  (Wood Aff. ¶25.)

After the present lawsuit was filed, Gilbert Mobley of Tcherneshoff Consulting, Inc., was retained by the Plaintiffs to inspect the subject

---

[9] Ms. Fendley had difficulty with one of the ramps leading to the playground and had to ask a stranger for assistance in pushing her up the ramp.  (Fendley Dep. p. 37-38, 40-41.)

restaurants for ADA compliance and to make recommendations for the removal of barriers to access.  On September 17, 2003, Mr. Mobley filed an expert's report detailing his findings and his recommendations for the removal of barriers to access.[10]

_____

[10] The Plaintiffs provided a summary of Mr. Mobley's findings.  The architectural barriers identified by Mr. Mobley and specifically at issue in Plaintiffs' motion for partial summary judgment at the Vestavia restaurant are: (1) the accessible parking spaces and access aisles have excessive running and cross slopes; (2) the existing curb ramp has an excessive running slope; (3) there are no accessible tables; (4) the condiments and soft drink lid and straw dispensers are out of reach range; (5) the women's restroom entry door is too narrow and lacks accessible signage; (6) the toilet seat is too low and the flush valve is on the wrong side of the water closet; (7) the women's water closet lacks compliant grab bars; (8) the women's lavatory lacks the required knee clearance for a wheelchair user; (9) the women's restroom mirror is too high; (10) the men's restroom is too narrow and lacks accessible signage; (11) the men's water closet is too far from the side wall and the toilet seat is too low; (12) the men's restroom grab bars are not compliant; (13) the men's restroom lavatory lacks knee clearance for a wheelchair user and the mirror is too high.  The architectural barriers identified at the Midfield restaurant are: (1) the accessible parking spaces and access aisles have excessive running and cross slopes; (2) the existing curb ramp is too narrow and has flared sides with excessive slopes; (3) the suggestion box is a protruding object; (4) the women's restroom door closer requires excessive force to open the toilet room entry door; (5) there is insufficient clear floor space on the pull side of the door to exit the toilet room of the women's restroom; (6) the women's restroom accessible signage is improperly located; (7) the women's restroom accessible toilet is too narrow for a wheelchair user; (8) the women's restroom water closet is mounted too far from the side wall; (9) the women's restroom flush valve is mounted on the wrong side of the water closet; (10) the women's restroom lavatory and vanity are too high for a wheelchair user; (11) the women's restroom mirror is too low; (12) the men's restroom accessible signage is improperly located; (13) the men's restroom accessible toilet stall is too narrow for a wheelchair user; (14) the water closet is mounted too far from the side wall; (15) the men's restroom lavatory and vanity are too high for a wheelchair user; and (16) the mirror is too low.  The architectural barriers identified at the Eastwood restaurant are: (1) the accessible parking spaces and access aisles have excessive running and cross slopes and  lack accessible signage; (2) the existing curb ramp can be blocked by a vehicle in the adjacent parking space and lacks edge protection; (3) there is no accessible route from the playground to the restaurant for a wheelchair user; (4) inaccessible tables in the outdoor dining areas; (5) inaccessible path of travel to the mid level of the outside dining area; (6) inaccessible tables in the interior dining area of the restaurant; (7) the literature box is out of reach range; (8) insufficient maneuvering clearance at the toilet room entry doors for wheelchair

## IV. Applicable Substantive Law and Analysis

### A.  Title III of the American with Disabilities Act

_____The Americans with Disabilities Act ("ADA") is divided into five sections.  Title I prohibits discrimination as it relates to private sector employment.  Title II prohibits discrimination as it relates to public programs and activities. Title III of the American with Disabilities Act prohibits discrimination by private entities in places of public accommodation.  Title IV prohibits discrimination in telecommunications.  Title V provides miscellaneous provisions that prohibit discrimination.

Title III provides: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  In a private action under the ADA, a court may provide "any person who is being subjected to

---

user; (9) inaccessible restroom signage; (10) protruding hand dryers; (11) inaccessible lavatories that may block the accessible path of travel within the toilet rooms; and (12) stall is too shallow for floor mounted water closet.

discrimination on the basis of disability in violation of" the Act injunctive relief, requiring a defendant to make its facility readily accessible to and usable by individuals with disabilities. Id. § 12188(a)(2). Discrimination prohibited by the Act includes a private entity's "failure to remove architectural barriers ... in existing facilities ... where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). Where removal is not readily achievable, the entity incurs liability if it fails to make those goods, services, and facilities "available through alternative methods if such methods are readily achievable," that is, "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. § 12182(b)(2)(A)(v) and 28 C.F.R. § 36.304(a).

There are two standards of compliance under the ADA: the new construction standard and the alteration standard. The Act sets forth accessibility guidelines, which identify the minimum technical requirements for ADA compliance for new construction and alterations to existing facilities. See 28 C.F.R. Pt. 36, App. A. Failure to abide by the Guidelines in new construction evidences intentional discrimination against disabled persons. See Association for Disabled Americans, Inc. v. Concorde Gaming

Corp., 158 F.Supp.2d 1353, 1362 n. 5 (S.D.Fla.2001).  New construction is

the highest standard, and it applies to public accommodations designed or

constructed after January 26, 1992 and to that portion of a facility altered after

January 26, 1992.   42 U.S.C. §12183(a); See also Brother v. CPL

Investments, Inc., 317 F.Supp.2d 1358 (S.D.Fla. 2004).   Under the new

standard, "any alteration to a place of public accommodation after January 26,

1992, must be made so as to ensure that, to the maximum extent feasible, the

altered portions of the facility are readily accessible to and usable by

individuals with disabilities."[11]  28 C.F.R. Part 36, App. B, Section 36.402.

The Act imposes a less rigorous standard of compliance on  "existing

facilities," constructed before its enactment on January 26, 1992. Concorde,

158 F.Supp.2d at 1362.  Existing facilities must comply with the ADA and

their compliance is governed by the alteration standard.  Under this standard,

the ADA Accessibility Guidelines provide guidance as to whether unlawful

architectural barriers exist in a facility, Pascuitti v. New York Yankees, 87

F.Supp.2d 221, 226 (S.D.N.Y. 1999), but "the Court cannot determine the

Defendants' liability from finding that elements of the [Defendants' facility]

---

[11] Any altered features that can be made accessible shall be made accessible.

deviate from those standards." <u>Access Now, Inc. v. South Florida Stadium Corp.</u>, 161 F.Supp.2d at 1368. "In order to establish that the defendant has violated the ADA, the Plaintiffs still must proffer evidence that removal of a given barrier is readily achievable." <u>Brother v. CPL Investments, Inc.</u>, 317 F.Supp.2d 1358 (S.D.Fla. 2004)(quoting <u>Pascuiti v. New York Yankees</u>, 87 F.Supp.2d at 226). "The compromise Title III makes is to require only reasonable modifications and readily achievable barrier removals or alternative methods, when the disabled are subjected to de facto discrimination in places of public accommodation." <u>Concorde</u>, 158 F.Supp.2d at 1362. In other words, the standard requires a showing that removal is "easily accomplishable and able to be carried out without much difficulty or expense." 42 U.S.C. §12181(9). The facilities at issue in this case predate the ADA, except the Eastwood store which was recently modified in the fall of 2003. Therefore, the Defendant's obligations to comply with the ADA regarding the Vestavia and Midfield stores are governed by the alteration standard which requires that the removal of barriers be "readily achievable." The Defendant's obligation to comply with the ADA regarding the Eastwood store is governed by the new construction standard which requires newly

18

constructed or altered portions of a facility to be  "readily accessible" to and

usable by individuals with disabilities.

### B.  Standing

Defendant contends that Plaintiffs lack the jurisdictional prerequisite of

standing.  In order to determine whether Plaintiffs can bring an action in this

Court under the ADA, the Court must first determine the Plaintiffs' standing.

Federal courts are required to "examine sua sponte jurisdictional issues such

as standing." <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344

F.3d 1263, 1272 (11th Cir. 2003); <u>See also</u>  <u>B.C. v. Plumas Unified School</u>

<u>District</u>, 192 F.3d 1260, 1264 (9th Cir. 1999).    The constitutional minimum

limits the judicial power of the federal courts to "cases" or "controversies."

U.S. Const. Art. III, § 2.  The doctrine of standing is made up of constitutional

and prudential considerations.  <u>See</u> <u>Allen v. Wright</u>, 468 U.S. 737, 751, 104

S.Ct. 3315, 82 L.Ed.2d 556 (1984).  The prudential component of standing

embraces:

> [J]udicially self-imposed limits on the exercise of
> federal jurisdiction, such as the general prohibition
> on a litigant's raising another person's legal rights,
> the rule barring adjudication of generalized
> grievances more appropriately addressed in the

> representative branches, and the requirement that a
> plaintiff's complaint fall within the zone of interests
> protected by the law invoked.

Allen, 468 U.S. at 751, 104 S.Ct. 3315 (citation omitted).   The core

component of standing, however, is "derived directly from the Constitution."

Id.  The Supreme Court has developed a three-part test for standing.  Lujan

v. Defenders of Wildlife, 504 U.S.555, 560-61, 112 S.Ct. 2130, 119 L.E.2d

351 (1992). First, the plaintiff must have suffered an "injury in fact."  This

consists of an invasion of a legally-protected interest which is (a) concrete and

particularized and (b) actual and imminent, not conjectural or hypothetical.

Second, there must be a causal connection between the injury and the conduct

serving as the basis of the lawsuit.  In other words, the injury has to be fairly

traceable to the challenged action of the defendant and not the result of the

conduct of a third party not before the court.  Third, it must be likely, as

opposed to merely speculative, that the injury will be redressed by a favorable

decision. Id. (quotations omitted).  The plaintiff invoking federal jurisdiction

has the burden of satisfying these elements.  Id.  at 561, 112 S.Ct. 2130

(citations omitted).

Under Title III, only injunctive relief is available.  42 U.S.C. §12188.

The equitable remedy of injunctive relief is "unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again-a 'likelihood of substantial and immediate irreparable injury.'" City of Los Angeles v. Lyons, 461 U.S. 95, 111, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." Lyons, 461 U.S. at 102, 103 S.Ct. 1660 (quotation omitted).

Standing for Plaintiffs Green and Access Now, Inc. will be analyzed separately.  The parties seeking to invoke federal jurisdiction bear the burden of establishing each element of standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

### 1.  Plaintiff Green

### A.  Barriers Encountered by Plaintiff Green

Plaintiff Green argues that the language of the ADA confers standing to sue for prospective injunctive relief for barriers she encountered, for barriers she did not encounter, and for barriers unrelated to her disability.

# I.  Injury in Fact

Plaintiff Green alleges that, in violation of the ADA's provisions, she was denied access to Defendant's restaurants due to Defendant's discriminatory failure to remove architectural barriers.   Discrimination suffered in violation of the ADA is an injury sufficient to give rise to an Article III case or controversy.  See Parr v. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1079 (D.Haw. 2000).   Standing is limited to claims for which the plaintiff is "among the injured."   See Lujan, 504 U.S. at 560, 112 S.Ct. 2130.  An "injury in fact" requires the plaintiff to "show that [s]he personally suffered some actual or threatened injury." Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982).  The Court finds that Plaintiff Green's allegations of discrimination against her disability of being mobility-impaired are personal to Plaintiff and demonstrate a cognizable interest for purposes of standing.

A plaintiff seeking injunctive relief must additionally allege "a real and immediate-as opposed to a merely conjectural or hypothetical-threat of future injury."   Wooden v. Board of Regents University Sys. of Geo., 247 F.3d

1262, 1284 (11th Cir. 2001).  Absent an allegation that she intends to return

to the public accommodation, an ADA plaintiff fails to demonstrate this

"irreducible minimum" and thus lacks standing to sue for injunctive relief.

Access Now, Inc. v. South Florida Stadium Corp., et. al., 161 F.Supp.2d 1357

(S.D.Fla. 2001); See Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).

Plaintiff Green alleges that she has a desire to return to the restaurants at issue

in this case but for the discrimination due to the architectural barriers.  The

Court finds that Plaintiff Green has established a likelihood of future injury

based on her reasonable desire to patronize the McDonald's restaurants in this

action.

### ii. Causation

If the plaintiff is [her]self the object of the action, "there is ordinarily

little question that the action or inaction [of the defendant] has caused him

injury, and that a judgment preventing or requiring the action will redress it."

Parr v. L & L Drive-Inn Restaurant, et. al., 96 F.Supp.2d 1065(D.Hawaii

2000); Lujan, 504 U.S. at 560-61, 112 S.Ct. 2130.  Plaintiff Green is the

object of this action and has alleged a direct injury as a result of the existence

of architectural barriers.  This injury is traceable to the actions or inaction of

Defendant because the injury occurred in a public accommodation under Defendant's operation and control.  Accordingly, Plaintiff Green has satisfied the causation element of the three-part test for standing under Lujan.

### iii. Redressability

Plaintiff seeks injunctive relief against Defendant for the alleged discrimination she encountered due to architectural barriers.  If successful, injunctive relief would include "an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities ..." 42 U.S.C. § 12188(a)(2).  The alleged injury suffered by Plaintiff Green would be redressed by injunctive relief.  Accordingly, Plaintiff Green has satisfied the third prong of the Lujan test.  Plaintiff has satisfied the constitutional minimum of Article III standing to seek injunctive relief.  The Court finds and the parties concede that Plaintiff Green has standing to allege claims of discrimination regarding access barriers she personally encountered at the three restaurants at issue in this case.[12]

---

[12] Plaintiff Green has standing to assert claims regarding (1)  inaccessible restrooms; (2) access aisles of accessible parking spaces are too narrow; and (3) lack of path of travel from accessible parking to the entrance at the Vestavia restaurant.  She also has standing to assert claims that the Midfield store  is in  non-compliance with the ADA because she specifically encountered the following barriers: (1) no accessible interior seating; (2) suggestion box protruding into path of travel; (3) lack of maneuvering space at the restroom doors; (4) pipes

## B.  Barriers Not Encountered by Plaintiff Green

Defendant contends that Plaintiff Green lacks standing for barriers she did not specifically encounter upon visiting the three restaurants because she did not suffer an "injury in fact" as a result of the alleged barriers.  Plaintiff Green invokes the "futile gesture" exception to provide her with standing with regard to barriers she did not specifically encounter but are related to her disability.  The futile gesture provision[13] of the ADA states as follows:

> (1) Availability of remedies and procedures
>
> The remedies and procedures set forth in section 2000a-(3)a of this title are the remedies and procedures this subchapter provides to any person who is being subjected to discrimination on the basis

---

underneath the lavatory are not insulated; (5) the accessible stall is too small; (6) there is no rear grab bar provided in the water closet; and (7) the toilet paper dispenser is too far from the water closet.  Plaintiff Green did not allege architectural barriers that she personally encountered at the Eastwood store.

[13] The "futile gesture" language of Title III is taken from Teamsters v. United States, 431 U.S. 324, 366, 97 S.Ct. 1843, 52 L.E.2d 396 (1977).  In Teamsters, the Court held that plaintiffs who did not actually apply for promotions could nevertheless challenge the employer's racially discriminatory seniority system under Title VII of the Civil Rights Act of 1964, Pub.L. 88-352, 42 U.S.C. §2000e et seq., if they could show that they would have applied for the job if not for the employer's discriminatory practices.  See Teamsters, 431 U.S. at 367-68, 97 S.Ct. 1843.  The Court reasoned that "[w]hen a person's desire for a job is not translated into a formal application solely because of his unwillingness to engage in a futile gesture he is as much a victim of discrimination as he who goes through the motions of submitting an application." Id. At 365-66, 97 S.Ct. 1843.  Congress intended that Teamsters' "futile gesture" reasoning be applied to ADA claims.  See H.Rep.No. 101-485(II) at 82-83 (1990) reprinted in 1990 U.S.C.C.A.N. 303, 365 ("The Committee intends for this doctrine to apply to this title"); S.Rep. No. 101-116 at 43 (1989).

of disability in violation of this subchapter or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 12183 of this title. Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this subchapter does not intend to comply with its provisions.

42 U.S.C. §12188(a)(1); see also 28 C.F.R. § 36.501(a). "Although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." See Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000)

The applicability of Plaintiff's futile gesture exception will be analyzed separately as to each restaurant at issue in this case.[14]

---

[14] Plaintiffs invoke the "futile gesture" exception in their motion for partial summary judgment for barriers the Plaintiffs did not encounter. The Plaintiffs rely on the findings of Mr. Mobley outlined in his expert report several months after the filing of Plaintiffs' complaint. Most of Mr. Mobley's findings regarding architectural barriers entail barriers that the Plaintiffs did not encounter and/or were not aware of through personal observation at the time of filing their complaint, including but not limited to, accessible parking spaces and access aisles having excessive running cross slopes, condiments, soft drink lids, and straw dispensers out of reach range, hand dryers potentially being protruding objects, and inaccessible lavatories, vanities, and mirrors. The statute, 41 U.S.C. 12188 , does not require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by the statute does not intend to comply with its provisions. Some courts have defined actual notice as notice

Vestavia

Plaintiff Green claims the Vestavia store was not compliant with the

ADA because (1) parking spaces lack access aisles (2) parking spaces are not

van accessible for vans with lifts; (3) the store has no path of travel from

accessible parking to the entrance; (4) outside seating is not accessible; (5)

---

obtained by encountering discrimination, or [having] learned of the alleged violations through expert findings or personal observation.  See Parr v. L&L Drive-Inn Rest., 96 F.Supp.2d 1065, 1081 (D.Haw. 2000); Resnick v. Magical Cruise Company, Limited, 148 F.Supp.2d 1298 (M.D.Fla. 2001).  The Eleventh Circuit has not defined actual notice under 42 U.S.C. §12188(a)(1) and whether it entails either knowledge obtained through personal observation or expert testimony.  This court finds it persuasive that  "although plaintiffs need not engage in the 'futile gesture' of visiting a building containing known barriers that the owner has no intention of remedying, they must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers."  Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir. 2000).  This Court also finds it persuasive that "parroting legal principles or an expert's conclusions is insufficient to prove a concrete, individualized injury as is required to support standing."  Frotton v. Barkan, 236 F.Supp.2d 92 (D.Mass. 2002). Plaintiffs do not have standing under the "futile gesture" exception to assert violations based on  architectural barriers not encountered by Plaintiffs at the three stores that were identified by Mr. Mobley in his expert report but were not known to Plaintiffs at the time of the filing of their complaint.  Further, Plaintiffs have alleged barriers that were not specifically enumerated in their complaint.  Once Plaintiffs became aware of barriers identified in Mr. Mobley's expert report that were not included in their original complaint, Plaintiffs should have amended their complaint.  The Eleventh Circuit has found that "Rule 8(a)'s liberal pleading standard is inapplicable once discovery has commenced, and that 'at the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a).'" Hurlbert v. St. Mary's Health Care System, Inc., ___F.3d ___, 2006 WL 345823 (11th Cir. Feb. 16, 2006)(quoting Gilmour v. Gates, McDonald and Co., 382 F.3d 1312, 1315 (11th Cir. 2004)(per curiam).  "Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect [a] fundamental change, Hulbert was not entitled to raise it in the midst of summary judgment." Hulbert,2006 WL 345823 (11th Cir. Feb. 16, 2006); See also Gilmour, 382 F.3d at 1315 ("A plaintiff may not amend [his] complaint through argument in a brief opposing summary judgment.")  This Court finds that it is now too late for Plaintiffs to allege architectural barriers that were not alleged in their complaint.  Accordingly, Plaintiffs' motion for partial summary judgment is due to be denied.

there is not enough space for a wheelchair to enter the restrooms; and (6) the emergency exits are not on accessible routes. (Amended Complaint ¶ 12). Plaintiff's only visit to the Vestavia store occurred before November of 2002, when her husband drove her there in her Monte Carlo to obtain carry-out food. She did not own a van and did not use one when she visited the Vestavia store. Plaintiff has not presented any evidence that she attempted to use the outside seating and use the emergency exit at the Vestavia restaurant. Although Plaintiff Green did not go inside the women's restroom and use it at the Vestavia store, she alleges that she went to it and looked in because she could not enter the restroom in her wheelchair due to the lack of space and narrow width of the restroom door. (Aff. of Cathy Green). Plaintiff alleges that the men's restroom is also in non-compliance with the ADA. Although there is no evidence that she attempted to use the men's restroom on her visit, there is no evidence that Plaintiff Green did not personally observe the width of the men's restroom door. Plaintiff alleges that she can assert claims that she did not specifically encounter as long as they are related to her disability. The Defendant asserts that Plaintiff Green did not have any problems receiving and consuming the food that she ordered. She carried the food out

as she planned.  Therefore, the Defendant alleges that she does not have standing to assert violations of the ADA that she did not encounter.

In the present case, the Court finds that Plaintiff can avail herself of the "futile gesture" exception because she had "actual notice" at the time suit was filed that the Defendant did not intend to comply with the statute at the Vestavia restaurant.  The Plaintiff alleged in her original Complaint filed May 22, 2002 and her First Amended Complaint filed June 18, 2003 that the Defendant was in violation of the ADA because of barriers such as the lack of: (1) inaccessible van parking for vans with lifts, (2) outside seating, (3) access aisles, (4) path of travel from accessible parking to the entrance, (5) inaccessible restrooms and (6) inaccessible routes to the emergency exits. Although Plaintiff did not encounter all of the barriers alleged in her complaint that are specific to wheelchair restricted individuals, she has demonstrated that at the time of her complaint she had actual notice through personal observation of inaccessible van parking at the Vestavia restaurant. Resnick v. Magical Cruise Company, Limited, 148 F.Supp.2d 1298 (M.D.Fla. 2001) (finding that Plaintiffs could not avail themselves of the "futile gesture" exception because they did not have "actual notice" at the time suit was filed

that Magical did not intend to comply with the statute.)  Plaintiff has not presented any evidence that she personally observed or had  actual notice regarding inaccessible outside eating and inaccessible routes to the emergency exits.  Therefore, Plaintiff cannot invoke the futile gesture exception as to inaccessible outside eating and inaccessible routes to the emergency exits because she has not presented sufficient evidence that she had actual notice of such alleged barriers.

In contrast to other cases adjudicated by courts, Plaintiff Green in this action visited the premises of the Vestavia restaurant, encountered architectural barriers in violation of the ADA, and alleged violations at the Vestavia restaurant that are specific to her disability.  See Resnick v. Magical Cruise Co., 148 F.Supp.2d 1298, 1301 (M.D.Fla. 2001)(finding that review of defendant's website is insufficient to provide actual knowledge of alleged violation necessary to invoke the futile gesture exception); Moyer v. Walt Disney World Co., 146 F.Supp.2d 1249 (M.D.Fla. 2000)(futile gesture exception did not operate to remedy disabled wheelchair user's lack of standing to assert alleged violations of Americans with Disabilities Act against theme park due to his failure to actually visit certain areas in theme

park, and therefore actually be subjected to alleged violations, before filing

lawsuit;  Steger v. Franco, Inc., 228 F.3d 889, 894 (8th Cir. 2000)(denying

standing for three plaintiffs who never visited facility before initiation of suit,

but granting standing to blind plaintiff who was unable to see to use the men's

room because its signage was not ADA compliant.)

Although in the context of Title III of the ADA, a "plaintiff[ ] need not

engage in the "futile gesture" of visiting a building containing known barriers

that the owner has no intention of remedying, see 42 U.S.C. § 12188(a)(1),

[she] must at least prove knowledge of the barriers and that [she] would visit

the building in the imminent future but for those barriers." Equal Access For

All, Inc., v. Hughes Resort, Inc., No. 504CV178MCR, 2005 WL 2001740

(N.D.Fla. 2005)(quoting  Steger v. Franco, Inc., 228 F.3d 889, 892 (8th Cir.

2000); See also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528

U.S. 167, 190-91, 120 S.Ct. 693, 145 L.E.d.2d 610 (2000).  "Absent an

allegation that [s]he intends to return to the public accommodation, an ADA

plaintiff fails to demonstrate the "irreducible minimum" [that the harm is real

and immediate] and thus lacks standing to sue for injunctive relief."  See

Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).

31

The Plaintiff expresses a desire to return to the Vestavia restaurant but for the architectural barriers.   The evidence produced by the Plaintiff demonstrates that she only visited the Vestavia restaurant once prior to the filing of her complaint.   However,  she has testified that she anticipates patronizing the Vestavia restaurant in the future but for the discrimination. Although a plaintiff need not repeatedly suffer discrimination in order to assert her rights under Title III, it is clearly established that ADA plaintiffs who seek injunctive relief must still demonstrate that they themselves face a real and immediate threat of future harm.  See Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001);  Schroedel v. New York Medical Center, 885 F.Supp. 594, 599 (S.D.N.Y. 1995).   Injury in the past is not enough to support a "finding of an Article III case or controversy" in a Title III ADA action. Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001).  The Court finds that Plaintiff Green does have standing in this action because she has properly invoked the futile gesture exception.

Midfield

Plaintiff Green claims the Midfield store is in non-compliance with the ADA because the parking spaces are  not accessible for vans with lifts.  The

Defendant asserts that Plaintiff Green does not have standing to assert a claim regarding inaccessible van parking because she did not personally encounter such barrier.  Plaintiff Green visited the Midfield store on or about  February 14, 2003.  This was her only visit to the Midfield store.  She dined in with her husband, who drove her to the Midfield store in his Ford Explorer Sport.  Plaintiff Green does not own a van with a lift and has never visited the Midfield store in a van with a lift.

Plaintiff Green has demonstrated that she had actual notice of the architectural barrier through personal observation prior to the filing of her complaint.  Plaintiff Green asserts that she faces a real  and immediate threat of future harm because she has a desire to return to the Midfield store but for the inaccessible parking spaces for vans with lifts.  Plaintiff Green has not demonstrated that she has or will purchase a van with a lift in the future.  As noted above, Plaintiff Green has a Monte Carlo and her husband has a Ford Explorer Sport.  Although Plaintiff Green testified that she anticipates to visit the Midfield restaurant in the future but for the inaccessible parking for vans with lifts, Plaintiff Green has not demonstrated that she faces a real and immediate threat of future harm.  Accordingly, the Court finds that Plaintiff

Green does not have standing to allege a claim of inaccessible van parking that she did not specifically encounter.

Eastwood

Plaintiff Green claims the Eastwood store is in non-compliance with the ADA for architectural barriers she did not encounter because (1) parking spaces are not van accessible; (2) the toilet paper dispenser is mounted out of reach range; (3) pipes underneath the lavatory are not insulated; (4) the ramp to the playground is too steep and there is no accessible route provided; (5) there are no accessible tables provided outside; (6) the accessible toilet stall is too small; and (7) the access aisles at the accessible parking spaces are too narrow.  Plaintiff Green visited the Eastwood store on or about June 18, 2003 when she utilized the drive-thru window to order food.[15]  Plaintiff Green

---

[15] Plaintiff Green has visited the Eastwood store on other occasions before she moved to Rugby Court in Birmingham near the Eastwood Mall.  However, Plaintiff Green does not remember the exact dates.  Plaintiff Green moved to Westfield Court in Birmingham in November 2002 after residing at Rugby Court for six years.  On Plaintiff's visits she remembers visiting the restroom.  (Green Dep. p. 68-69.)  Plaintiff's claims for violations for architectural barriers on her visits before she moved to Rugby are time-barred.  Federal courts have extended the states' statute of limitations for personal injury to claims under the ADA.  See, e.g., Everett v. Cobb City Sch. Dist., 138 F.3d 1407, 1409-1410 (11th Cir. 1998) (holding that Georgia statue of limitations for personal injury actions should be applied to discrimination claims under Title II of the ADA.); Soignier v. Am. Bd. of Plastic Surgery, 92 F.3d 547, 551 (7th Cir. 1996) (district court correctly applied Illinois's statute of limitations for personal injuries as the most analogous limitations period for plaintiff's Title III ADA claim.); Lewis v. Aetna Life Ins. Co., 993 F.Supp. 382 (E.D.Va. 1998) (ADA does not specify a statute of limitations for claims under either Title I

experienced no problems in purchasing and receiving her food during her last visit to the Eastwood store.  There is no evidence that Plaintiff Green encountered any architectural barriers while visiting the Eastwood restaurant. Plaintiff Green visited the Eastwood store in her car and utilized the drive-thru window.  She neither owns nor operates a van.  Plaintiff Green has not been in the Eastwood women's restroom since six years before the filing of her complaint.[16]  She has never been on the playground or outdoor dining area.  It is not clear from the evidence when she encountered and/or personally observed  architectural barriers on the playground or outdoor dining area.  Viewing the facts in the light most favorable to Plaintiff Green, the Court will assume that her encounter or personal observation of the architectural barriers on the playground or leading to the playground and the

---

or Title III, therefore district courts must adopt the most analogous state statute of limitation.) "In an action for vindication of federally-created rights where there is no specific federal statute of limitations for actions, and it is clearly not an action arising under contract, the one-year (now two-year) statute of limitations applies."  Ripp v. Dobbs Houses, Inc., 366 F.Supp. 205 (N.D. Ala 1973.); See also Sewell v. Grand Lodge of Int'; Ass'n of Machinists, 445 F.2d 545 (5th Cir. 1971.)  Alabama has a two-year personal injury statute of limitations for "all actions for any injury to the person or rights of another not arising from contract and not specifically enumerated in [] section 6-2-38(l)."ALA. Code § 6-2-38(l) (1975); See also Grubbs v. Alabama State Bar, 542 So.2d 927 (Ala. 1989.)

[16] As noted in footnote 10, Plaintiff Green's claim for architectural barriers in the restroom at the Eastwood store is time barred.

outdoor seating are within the statute of limitations period.

Plaintiff can avail herself of the "futile gesture" exception because she had "actual notice" at the time suit was filed that the Defendant did not intend to comply with the statute at the Eastwood restaurant. There is no evidence that Plaintiff Green encountered architectural barriers resulting in discrimination on her visit to the Eastwood restaurant. There is no evidence that she had actual notice of the architectural barriers she did not personally encounter but alleged in her complaint. Even if Plaintiff Green personally observed architectural barriers she did not encounter while driving through the drive-thru, there is no evidence that she went into the Eastwood restaurant and personally observed the alleged architectural barriers that were inside the restaurant.[17]   Therefore viewing the facts and inferences in the light most favorable to Plaintiff, the Court finds that Plaintiff Green can only assert that she had actual notice of the exterior architectural barriers she observed but did not personally encounter.[18]

---

[17] The architectural barriers that are inside the restaurant that Plaintiff Green did not personally encounter are: the toilet paper dispenser is mounted out of reach range, the accessible toilet is too narrow,  and the pipes underneath the lavatory are not insulated

[18] The exterior architectural barriers included inaccessible van parking,  inaccessible route to the playground because the ramp to the playground is too steep, no accessible exterior tables,

Even though Plaintiff Green had actual notice of the exterior architectural barriers, Plaintiff Green asserts that she faces a real  and immediate threat of future harm.  She alleges that she plans to visit the Eastwood restaurant in the future but for the architectural barriers. Accordingly, the Court finds that Plaintiff Green does have standing to assert claims of exterior architectural barrier violations of the ADA that she did not personally encounter.

### C.  Barriers Unrelated to Plaintiff Green's Disability

Plaintiff Green alleges violations of the ADA pertaining to disabilities unrelated to her specific disability.   Plaintiff Green alleges violations regarding the lack of accessible signage in the restrooms at the Midfield  and Eastwood restaurants.  She also alleges barriers regarding the faucet controls requiring pinching, twisting, and grasping.   Plaintiff Green has not produced any evidence that she has a visual disability that requires her to use accessible signage.  Plaintiff Green has not produced any evidence that her disability prevents her from using faucet controls that require pinching, grasping, and

---

and the access aisles at the accessible parking spaces are too narrow.

twisting.  "Plaintiffs lack standing to complain about violations on behalf of all disabled individuals, as this would expand the standing doctrine beyond the limits of Article III."  See Access Now v. South Florida Stadium Corp., et.al., 161 F.Supp.2d 1357 (S.D.Fla. 2001)(quoting Lewis v. Casey, 518 U.S. 343, 358 n. 6, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996)).  "To the extent that Plaintiffs complain about violations that would discriminate against blind or deaf persons, or any disabilities other than that suffered by Plaintiff Resnick, they lack standing to pursue such claims."  Access Now v. South Florida Stadium Corp., et.al., 161 F.Supp.2d 1357 (S.D.Fla. 2001)(quoting Parr, 96 F.Supp.2d at 1082).   Plaintiffs do not have standing to complain about alleged barriers which are not related to their respective disabilities.  See Brother v. CPL Investments, Inc., 317 F.Supp.2d 1358 (S.D.Fla. 2004); Steger v. Franco, 228 F.3d 889, 893 (8th Cir. 2000); Ass'n for Disabled Americans, Inc. v. Concorde Gaming Corp., 158 F.Supp.2d 1353 (S.D.Fla.2001).  The Court finds that Plaintiff Green does not have standing to allege violations of the ADA not related to her disability.

## 2.  Plaintiff Access Now, Inc.

The plaintiff group in this case is Access Now, Inc.  The Supreme

38

Court of the United States addressed associational standing in <u>Hunt v.</u>
<u>Washington State Apple Advertising Comm'n</u>, 432 U.S. 333 (1977). In <u>Hunt</u>,
the Supreme Court set forth a test to determine whether an association has
standing to bring suit on behalf of its members. The Eleventh Circuit has
adopted and applied the associational standing test in its decisions. <u>See</u> <u>Sierra</u>
<u>Club v. Tennessee Valley Authority</u>, 430 F.3d 1337 (11th Cir. 2005). An
association "has standing to bring suit on behalf of its members when [1] its
members would otherwise have standing to sue in their own right, [2] the
interests at stake are germane to the organizations purpose, and [3] neither the
claim asserted nor the relief requested requires the participation of individual
members in the lawsuit." <u>Sierra Club v. Tennessee Valley Authority</u>, 430
F.3d 1337 (11th Cir. 2005) (quoting <u>Friends of the Earth, Inc. v. Laidlaw</u>
<u>Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 181, 120 S.Ct. 693, 704, 145 L.Ed.2d
610 (2000)).

The first requirement of associational standing is that at least one
member meets the three requirements of individual standing. As discussed
above, Plaintiff Green, who is a member of Access Now, Inc., has
demonstrated that she has met the requirements for individual standing.

Melissa Fendley, who is a member of Access Now, suffered discrimination at the Vestavia and Eastwood McDonald's restaurants.  Ms. Fendley has standing to sue in her own right.  She suffered an injury in fact because she was subjected to discrimination due to inaccessible restrooms, the lack of exterior accessible tables on the playground, inaccessible route between the Eastwood restaurant and the playground located at the facility, and inaccessible van parking.  Ms. Fendley has alleged that the harm is real and immediate.  She testified in an affidavit that she frequently takes her daughter to the Vestavia, Midfield, and Eastwood McDonald's restaurants and she plans to return to them.  Ms. Fendley has demonstrated that the alleged direct injuries she suffered is a result of the existence of architectural barriers at the Defendant's restaurants that are violations of the ADA.  The alleged injuries suffered by Ms. Fendley would be redressed by the injunctive relief Plaintiffs seek.  Ms. Fendley meets the three requirements of individual standing.

Since the two individual members have standing to sue in their own right, the court turns to the second and third requirements of associational standing:  whether the interests at stake are germane to the Plaintiff organization's purposes and whether the claim or relief requested requires the

participation of its individual members in the lawsuit.  Access Now, Inc. is a nonprofit corporation dedicated to correcting violations of the Americans with Disabilities Act in both public accommodations and public facilities.  The organization focuses on ensuring the accessibility and usability of public accommodations and facilities to individual with disabilities.  The interests at stake in this action are germane to the Plaintiff's organization because the suit seeks to remove barriers to access of Access Now's membership to Defendant's premises and to bring those premises into compliance with the ADA.

The claim or relief requested by Access Now, Inc. does not require the participation of Ms. Fendley, or any other member in the organization. See Sierra Club v. Tennessee Valley Authority, 430 F.3d 1337 (11th Cir. 2005) (quoting Nat'l Parks Conservation Ass'n., 324 F.3d at 1244 (holding that the third prong of associational standing test was met where individual members did not need to be made parties to the suit "in order to advance the [association's Fifth Amendment] equal protection claim or to fashion the sort of prospective injunctive relief sought by appellants").  In Hunt, the Supreme Court reiterated its decision in Warth v. Seldin, 422 U.S. 490, 498-499, 95

S.Ct. 2197, 2204-2205, 45 L.Ed.2d 343 that:

> (W)hether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought.  If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured.  Indeed, in all cases in which we have expressly recognized standing in associations to represent their members, the relief sought has been of this kind.

422 U.S., at 515, 95 S.Ct., at 2213.  The Court finds that Access Now, Inc. has associational standing.[19]

## C.  Burden of Proof

To prove a prima facie case of discrimination under Title III of the ADA, Plaintiffs must show that: 1) Plaintiffs are disabled;[20] 2) that

---

[19] Access Now, Inc. has standing to allege violations of the ADA for barriers that its members, Cathy Green and Melissa Fendley, encountered.  Consistent with the analysis above, Access Now, Inc. does not have standing to allege violations of the ADA for barriers that are not specific to its members' disabilities.  It should be noted that Ms. Fendley has alleged that she does not remember encountering architectural barriers at the Midfield restaurant.  Ms. Fendley has alleged that she encountered an inaccessible route to the playground including a ramp too steep at the Eastwood store.  Ms. Fendley has alleged that she encountered at the Vestavia restaurant (1) inaccessible van parking; (2) inaccessible restrooms; and (3) inaccessible exterior tables.  She has not alleged barriers that she did not encounter or are not specific to her disability.

[20] The ADA defines "disability" to mean, with respect to an individual: a physical or mental impairment that substantially limits one or more of the major life activities of such individual, a record of such an impairment, or being regarded as having such an impairment.  42 U.S.C. § 12102(2).

42

defendant's restaurant is a place of public accommodation;[21] and 3) Plaintiffs were denied full and equal treatment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation because of their disability.  Louie v. National Football League, 185 F.Supp.2d 1306 (S.D. Fla. 2002); Access Now, Inc. v. South Florida Stadium Corp., et. al., 161 F.Supp.2d 1357 (S.D.Fla. 2001); See also Shotz v. Cates, 256 F.1077, 1079 (11th Cir. 2001); Parr v. L&L Drive-Inn Restaurant, 96 F.Supp.2d 1065, 1085 (D.Haw. 2000).  Since Plaintiffs' claims allege discrimination due to  architectural barriers, Plaintiffs must further show that each existing facility presents an architectural barrier that is prohibited under the ADA, the removal of which is readily achievable.[22] Access Now, Inc., 161 F.Supp.2d 1357, 1363; Parr, 96 F.Supp.2d at 1085.  If the Plaintiffs satisfy their burden and demonstrate that an architectural barrier exists and its removal is readily achievable, the Defendants can invoke an affirmative defense and rebut Plaintiffs' case by showing that removal of the

---

[21] Public accommodations under Title III include: restaurants, hotels, doctor's offices, pharmacies, grocery stores, shopping centers, and other similar establishments.  See 42 U.S.C. §12181(7).

[22] The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).

disputed barrier could not be accomplished without much difficulty or expense.  Access Now, Inc., 161 F.Supp.2d 1357, 1363; Parr, 96 F.Supp.2d at 1085.

It is undisputed that Plaintiffs suffer from a disability within the meaning of the ADA.  42 U.S.C. §12102(2) It is also undisputed that the Defendant's McDonald's restaurants at issue in this action are places of public accommodation as defined by the ADA and the Defendant's actions or inactions are covered by the ADA.  42 U.S.C. §12102(2) and 42 U.S.C. §12182(a).  Plaintiffs have presented sufficient evidence to demonstrate that they were denied full and equal treatment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation because of their disability.

Plaintiffs must show that each existing facility presents an architectural barrier that is prohibited under the ADA.  Plaintiffs encountered at the Vestavia store  inaccessible restrooms, inaccessible van parking, lack of path of travel from accessible parking to the entrance of the store,  parking spaces lacked  access aisles with adequate space, and lack of accessible exterior tables on the playground.  Plaintiffs encountered at the Midfield store

inaccessible interior seating, lack of maneuvering space at the restroom doors, inaccessible van parking, suggestion box protrudes into path of travel, pipes under lavatory are not insulated, accessible stall is too small, no rear grab bar provided in the water closet, and toilet paper dispenser is too far from the water closet.  Plaintiffs encountered at the Eastwood store inaccessible van parking, inaccessible route to playground due to steep ramp, inaccessible exterior tables, and accessible parking spaces are too narrow.  The barriers encountered by Plaintiffs are architectural barriers under the ADA.

Once Plaintiff has shown that each existing facility presents an architectural barrier that is prohibited under the ADA, Plaintiff must show that the architectural barriers' removal is readily achievable.  The factors to consider when determining whether the removal of a barrier is readily achievable include: (1) the nature and the cost of the action needed; (2) the overall financial resources of the facility; (3) the overall financial resources of the covered entity; and (4) the type of operation of the covered entity.  42 U.S.C. §12181(9).  Both parties' have presented through expert testimony disputed evidence of whether the removal of the architectural barriers is readily achievable.  "'Readily achievable' is a fact-intensive inquiry that will

infrequently be decided on summary judgment; however, the plaintiff cannot survive summary judgment without producing 'sufficient evidence to satisfy his burden that his suggested method of barrier removal is readily achievable.'" Access Now, Inc. v. South Florida Stadium Corp., et. al., 161 F.Supp.2d 1357 (S.D.Fla. 2001)(quoting Colorada Cross Disability Coalition v. Hermanson Family L.P., 264 F.3d 999 (10th Cir. 2001)).  Plaintiffs have provided cost estimates and recommended specific construction plans to demonstrate that removal of the architectural barriers is readily achievable. The Defendant has challenged Plaintiffs' expert findings.  The Court finds that there is a question of fact as to whether removal of the architectural barriers[23] is readily achievable.

## D.  Mootness

"The mootness doctrine requires that a live controversy must exist at the case beginning of the litigation and must remain alive throughout the litigation. Failure of the controversy to remain in existence moots the claim

---

[23] The architectural barriers that are at issue at the Vestavia store are  inaccessible restrooms, lack of path of travel from accessible parking to the entrance of the store, and lack of accessible exterior tables on the playground.  The architectural barriers that are at issues at the Midfield store are the accessible stall is too small, toilet paper dispenser is too far from the water closet, and suggestion box protrudes into path of travel.  The architectural barrier that is at issue at the Eastwood store is an inaccessible route to the playground.

and deprives the court of jurisdiction."  See Catorela v. Mellon, et.al., 754

F.Supp.191 (M.D.Fla. 1990);  Tucker v. Phyfer, 819 F.2d 1030, 1033 (11th

Cir. 1987).   The Defendant asserts that it has remedied many of the

architectural barriers that are at issue in this action.  The Defendant asserts

that it has remedied the  inaccessible parking for vans with lifts and

inadequate space of the access aisles for the parking spaces at the Vestavia

restaurant.   The Defendant asserts that it has remedied the lack of

maneuvering space at the restroom doors, uninsulated pipes under the

lavatory, lack of rear grab bar in the water closet, inaccessible parking for

vans with lifts, and inaccessible interior seating at the Midfield store.  The

Defendant also asserts that it has remedied the inaccessible parking for vans

with lifts, inaccessible exterior tables, and the narrowness of the accessible

parking spaces at the Eastwood store.   The Plaintiffs challenge the

Defendant's remedial measures on the grounds that the expert's affidavit used

to submit such evidence is inadmissible.[24]  The Plaintiffs do not challenge that

the remedial measures  were not undertaken.

The Plaintiffs seek injunctive relief in this action.  If ADA "plaintiffs

_____

[24] The expert's affidavit is the subject of a separate motion to strike.

have already ... received everything to which they would be entitled, i.e., the challenged conditions have been remedied, then these particular claims are moot absent any basis for concluding that the plaintiffs will again be subjected to the same wrongful conduct by this defendant." Independent Living Resources v. Oregon Arena Corporation, 982 F.Supp. 698, 770 (D.Or. 1997). Accordingly, the Court finds that the Plaintiffs' claims regarding architectural barriers that were remedied by the Defendant are deemed moot. The court finds that to the extent the Defendant has remedied the architectural barriers above, the Defendant's motion for summary judgment is due to be granted as to the remedied architectural barriers.

## V.  Conclusion

For the reasons set forth above, the Defendant's motion for summary judgment is due to be **GRANTED** in part and **DENIED** in part.   The Plaintiffs' motion for partial summary judgment is due to be **DENIED**. This opinion shall be carried out by a separate Order.

**DONE** and **ORDERED** this 28th day of March, 2006.


_____   **VIRGINIA EMERSON HOPKINS**
                                       **United States District Judge**